**KOHL'S DEPARTMENT STORES, INC., Plaintiff,**

v.

**TARGET STORES, INC., Defendant.**

**No. CIV. 3:02cv633.**

United States District Court,
E.D. Virginia,
Richmond Division.

March 14, 2003.

R. Webb Moore, Lisa S. Goodwin, Hirschler Fleischer, PC, Richmond, VA, Robert O. Fleming, Jr., Smith, Currie & Hancock, Atlanta, GA, for Kohl's.

William L. Thurston, Lisa K. Duley, Marchant, Thurston, Honey & Blanks, LLP, Richmond, VA, for Chesterfield Crossing.

Everette G. Allen, Jr., Robert L. Harris, Jr., Allen & Allen, Richmond, VA, for Ukrop's.

Dabney J. Carr, IV, Michael A. Montgomery, Troutman Sanders, LLP, Richmond, VA, for Target.

William R. Mauck, Jr., Edward L. Haskell, Williams Mullen, PC, Richmond, VA, for Williams Co.

Stephan F. Andrews, Jacqueline M. Reiner, Wright, Robinson, Osthimer & Tatum, Richmond, VA, for McKinney.

Dennis R. Carluzzo, Tracy C. Hudson, Smith, Hudson, Alston & Carluzzo, Manassas, VA, Charles L. Williams, Blackwell N. Shelley, Jr., Butler, Macon, Williams, Pantele & Lowndes, P.C., Richmond, VA, William J. Brennan, IV, Charles R. Bruton, Buchanan Ingersoll, Philadelphia, PA, for ReUse.

Dennis R. Carluzzo, Tracy C. Hudson, Smith, Hudson, Alston & Carluzzo, Manassas, VA, for S.W. Rodgers.

John Franklin, III, Brian N. Casey, Taylor & Walker, PC, Norfolk, VA, for Freeman and Zannino.

John A. Conrad, Abbigale B. Frederick, The Conrad Firm, Richmond, VA, for Telesis and KKE.

Raymond J. Sinnott, III, Kenneth F. Hardt, Sinnott, Nuckols & Logan PC, Midlothian, VA, for KBS, Inc. and Ericksen, Roed & Assoc.

Gerald I. Katz, Mark J. Stone, Katz & Stone, Vienna, VA, for L.F. Jennings.

Paulo E. Franco, Jr., Wright, Robinson, Osthimer & Tatum, Richmond, VA, for Ronayne.

Frederick R. Kozak, Rick & Kozak, PLLC, Powhatan, VA, for Eilerson.

## MEMORANDUM OPINION

PAYNE, District Judge.

This consolidated civil action arises out of the construction of the Chesterfield Crossing Shopping Center (the "Project"). The four buildings comprising the Project each have suffered significant structural damage since construction was completed. The owners of three of the four buildings each filed actions against the developer/owner seeking contractual indemnification for the damage to their respective buildings. The developer/owner instituted a third-party complaint against the site contractor on the same theory. A number of third-party indemnity claims ensued.

All four building owners assert that the damage to their respective buildings is the result of the expansion of fill material supplied by ReUse Technologies, Inc. ("ReUse"). Several of the third-party complaints assert the same theory. ReUse was impleaded by the excavation and grading contractor which procured the fill material from ReUse. Thereafter, ReUse impleaded the contractors who worked on the owners' buildings (the "Building Contractors") on a theory of contribution, alleging that any damage to the buildings was the result of substandard construction by the contractors, instead of, or in addition to, any defect associated with ReUse's fill material. Each of the Building Contractors has moved, under Fed.R.Civ.P. 12(b)(6), to dismiss the ReUse contribution claim against it. For the reasons that follow, these motions will be GRANTED, and the ReUse contribution claims will be DISMISSED without prejudice.

## STATEMENT OF FACTS

### A. The Relationship Among The Project Participants

To understand the contribution claims brought by ReUse against the Building Contractors, it is necessary to understand the contractual relationships among all of those involved in the Project. At some point before May 1997, Target Stores, Inc. ("Target") and Ukrop's Super Markets, Inc. ("Ukrop's") each purchased parcels of land at what is now known as the Chesterfield Crossing Shopping Center (the "Project"). In May 1997, Kohl's Department Stores, Inc. ("Kohl's") and Ukrop's, along with Chesterfield Crossing Shopping Center, L.L.C. ("CCSC") entered into a Site Development Agreement ("SDA") with Target. Under the SDA, Target agreed to convey a portion of its parcel to CCSC, and to perform all of the site development work on the Project. The site development work included "[c]learing and grading the entire Shopping Center, including any necessary undercutting, dewatering or stabilization of subgrades and compaction of soils (including subcharges) [and] the construction of any retaining walls or berms within the [Project] which are necessary to establish the Common Areas shown on the Site Plan." (Kohl's Compl., Exh. A.) On October 1, 1997, CCSC assigned to Kohl's its right to purchase the portion of the Target parcel identified in the SDA, and the SDA was so amended. On February 16, 1998, Kohl's conveyed to CCSC a portion of the parcel it acquired pursuant to the amended SDA.

In sum, Target agreed to perform site development work for the Project. Kohl's and Ukrop's each allege that Target agreed in the SDA to indemnify them for any damages resulting from defects associated with the site development work. CCSC further alleges that Kohl's agreed "to perform its obligations under the SDA and cause such Site Improvement Work for the [CCSC] Property to be performed in accordance with the SDA." (CCSC Compl., Exh. D.) Kohl's, Ukrop's, CCSC and Target will be referred to hereafter as "the Building Owners."

Target contracted the site development work to The Williams Company of Orlando, Inc. ("Williams") which contracted with various subcontractors who ultimately performed the site development work. The four Building Owners contracted with the Building Contractors who performed the work on the actual buildings. The specific contractual arrangements made by Williams and the Building Owners, respectively, are best understood when discussed in context of the actions filed by the respective Building Owners.

### B. The Structure of this Civil Action

Shortly after completion of the Project, each Building Owner discovered structural damage of varying severity to its respective building. After some investigation, the Building Owners determined that the damage was generally the result of defects associated with the fill material used in constructing the building pads that served as the base for their buildings. Kohl's, Ukrop's, and CCSC then initiated civil actions against Target and Target filed a third-party complaint against Williams. At the instance of the parties, these actions were consolidated, but clarity and completeness counsel that, for purposes of the pending motions, they be addressed separately.

#### 1. The Kohl's Action

Kohl's filed a complaint against Target on September 3, 2002 (the "Kohl's Action") alleging that the damage to its store was the result of expanding ash material used as fill in the construction of the building pad. Kohl's asserted a number of contract-based theories of recovery against Target, each arising out of the alleged breach of contractual duties that Target is alleged to have owed Kohl's under the SDA. Target then impleaded Williams Company of Orlando, Inc. ("Williams"), the general contractor for both the site development work and the construction of the Target building, asserting that the Target building likewise had suffered structural damage, and that Williams was responsible under its contracts with Target for both the damage to the Target building, as well as any liability of Target for damage to the Kohl's building.[1] Respecting site improvement work, Target alleged that:

---

1. Target originally raised claims against Williams respecting defects in both the site improvement

work, and the construction of the Target building

[d]uring the course of construction of the site improvements for [the Project], Williams or one or more subcontractors to Williams, made use of defective and unsuitable fill materials; failed to properly prepare and/or compact the subgrade; and/or failed to properly place and/or compact the engineered fill to properly or sufficiently support the foundations, slabs and buildings to be constructed at [the Project.]

(Target 3d Party Compl. at ¶ 7.)

Williams, in turn, filed a Fourth–Party Complaint against three of the subcontractors who contracted with Williams to perform different aspects of the site improvement work—S.W. Rodgers Co., Inc. ("Rodgers"), the earth-moving subcontractor; Engineering Consulting Services, Ltd. ("ECS"), which provided engineering testing and inspection services; and McKinney & Co. ("McKinney" or "CTI"), which provided soils engineering services—as well as Foundation Contractors, Inc. ("FCI"), the foundation subcontractor employed by Williams pursuant to its contract to build the Target store. Williams sought contractually-based indemnity from each of these subcontractors because of any alleged breaches of their respective contracts that might be found to have caused Williams to be liable to Target. Williams voluntarily has dismissed without prejudice its claims against ECS, McKinney, and FCI. In its claim against Rodgers, Williams alleged that:

If, as Target and Kohl's allege, there are defects and deficiencies at [the Project] inherent in the coal ash fill material or that relate to the preparation of the site, then Rodgers is responsible and liable for such defects and deficiencies and must indemnify Williams for any and all sums adjudged in favor of Target and against Williams *related to such defects and deficiencies in and damages resulting from the coal ash fill material or the site work at the [Project].*

(Williams Fourth Party Compl. at ¶ 21. (emphasis added).)

Rodgers then filed a Fifth–Party Complaint against ReUse. Rodgers alleged that

the ash fill to which Kohl's refers in its complaint is the product known as Xtra Fill that was made and supplied by ReUse. According to Rodgers, ReUse either negligently designed or manufactured the Xtra Fill, or breached implied and/or express warranties in its sales contract with Rodgers. Thus, Rodgers asserts that, if, as Kohl's and Target allege, the damage to Kohl's building is the result of expanding ash fill material, then ReUse is responsible for such defects and must indemnify Rodgers for any and all sums adjudged in favor of Williams related to such defects.

In its answer to Rodgers's Fifth–Party Complaint, ReUse asserted so-called "cross-claims" against Fourth Party Defendants ECS and McKinney, asserting that each of these parties failed to exercise reasonable care in performing their respective portions of the work on the Project, and/or negligently breached their contracts with Williams.

ReUse then filed a Sixth–Party Complaint against the various contractors who, pursuant to contracts with Kohl's, were responsible for constructing Kohl's building: KKE Architects, Inc. ("KKE"), the architect; Ericksen, Roed & Assoc., Inc. ("ER & A"), the structural engineer; and L.F. Jennings ("Jennings"), the general contractor for the Kohl's building. ReUse asserts that each of these parties failed to exercise reasonable care in performing their respective portions of the work on the buildings, and/or negligently breached their contracts with Kohl's. ReUse asserts that the damage to the Kohl's building is attributable, at least in part, if not entirely, to the poor workmanship of these contractors instead of, or in addition to, any defect in the Xtra Fill supplied by ReUse, and as a result, "contribution" from these parties is appropriate should ReUse be found liable to Rodgers.

## 2. The Ukrop's Action

On September 20, 2002, Ukrop's filed an action against Target (the "Ukrop's Action") alleging that the damage to its store was the result of expanding ash material used in the construction of the building pads. Like

---

itself. Williams and Target have settled the claims respecting the actual construction of the Target building. Target still maintains its claim

that its own building was damaged by defects in the building pads.

Kohl's, Ukrop's asserted a number of contract-based theories of recovery against Target, each arising out of the breach of duties that Target is alleged to have owed Ukrop's under the SDA. As in the Kohl's action, Target impleaded Williams, which impleaded Rodgers. Each of these entities raised claims analogous to, and in the same order as, those that they raised in the Kohl's action, modified only to reflect that the damaged buildings belonged to Ukrop's and Target rather than to Kohl's and Target. Next, ReUse asserted the same "cross-claims" against ECS and McKinney, and, as in the Kohl's Action, ReUse seeks "contribution" from each of the contractors responsible for constructing the Ukrop's building—Freeman & Morgan, Architects, P.C., the architect, Telesis Solutions, P.C. ("Telesis"), the structural engineer; and KBS, Inc., the general contractor for the Ukrop's building. ReUse asserted that each of these parties failed to exercise reasonable care in performing their respective portions of the work on the buildings, and/or negligently breached their contracts with Ukrop's, and that the damage to the Ukrop's building is attributable, at least in part, if not entirely, to the poor workmanship of these contractors, instead of, or in addition to, any defect in the Xtra Fill supplied by ReUse, and as a result, "contribution" from these parties is appropriate should ReUse be found liable to Rodgers.

### 3. The CCSC Action

The CCSC action is only slightly different than the Kohl's and Ukrop's Actions. Unlike Kohl's and Ukrop's, CCSC was not in privity of contract with Target. Rather, CCSC purchased its parcel from Kohl's after the site improvement work was complete, and could not proceed directly against Target. Thus, on October 7, 2002, CCSC filed a complaint against Kohl's, alleging that the damage to its store was the result of expanding ash material used in the construction of the building pads. CCSC asserted that Kohl's breached its express duty in its real estate contract with CCSC to "perform its obligations under the SDA and to cause such Site Improvement Work for the Property to be performed in accordance with the SDA,"

as well as the implied warranty of fitness for a particular purpose.

Kohl's then filed a Third–Party Complaint against Target, alleging that Target is responsible for damage to the Kohl's building, and asserting that Target is also liable to Kohl's to the extent that Kohl's is liable to CCSC. By way of third-party practice, Target, Williams, and Rodgers then raised claims analogous to, and in the same order as, those which they raised in the Kohl's and Ukrop's Actions, modified only to reflect that the damaged buildings belonged to CCSC, Kohl's and Target rather than merely Kohl's/Ukrop's and Target. Next, ReUse asserted the same "cross-claims" against ECS and McKinney, and, as in the Kohl's and Ukrop's Actions, ReUse sought "contribution" from each of the contractors that were involved in building the CCSC building— KKE, the architect; Zannino Engineering, Inc. ("Zannino"), the structural engineer; and Eilerson Development Corp. ("EDC"), the general contractor for the CCSC building. ReUse asserted that each of these parties failed to exercise reasonable care in performing their respective portions of the work on the buildings, and/or negligently breached their contracts with CCSC, and that the damage to the CCSC building is attributable, at least in part, if not entirely, to the poor workmanship of these contractors, instead of, or in addition to, any defect in the Xtra Fill supplied by ReUse, and as a result, "contribution" from these parties is appropriate should ReUse be found liable to Rodgers.

Before turning to the pending motions, it is important to note that the Building Owners have raised claims only respecting the site improvement work performed in preparation for the construction of the buildings. For reasons sufficient unto themselves, the Building Owners have decided to forego the opportunity to pursue claims against the various contractors that performed the work on the various buildings, and thus, in their complaints, the Building Owners have attributed none of the damage to their buildings to the actual construction of the buildings themselves. Rather, they have blamed squarely and directly the fill material that was supplied by ReUse.[2] Stated differently, no par-

---

**2.** Target originally asserted against Williams claims that were based on defective work associ- ated with the Target building.

ty upstream of ReUse in this litigation has made any claim respecting the actual construction of the buildings.

## C. The Motions to Dismiss

Each of the parties from whom ReUse seeks contribution (the "Building Contractors") has moved to dismiss ReUse's contribution claim against it. Although the Building Contractors offer slightly different rationales for dismissal, each posits the same core legal theory: ReUse has not set forth a cognizable contribution claim under the substantive law of Virginia. Generally stated, Virginia's contribution doctrine requires that the parties to a contribution claim share a common obligation to the injured party arising out of the same indivisible injury. Each of the Building Contractors argues that, because of the economic loss rule, which prohibits tort claims for economic losses caused by breaches of duties that arise solely out of contract, ReUse cannot establish the commonality of obligation and commonality of injury requirements of contribution under Virginia law.

One of the Building Contractors, L.F. Jennings, has raised the additional argument that, as presented, ReUse's contribution claims are not the proper subject of a third-party claim under Fed.R.Civ.P. 14(a). According to Jennings, the contribution claim, as presented, is neither derivative of, nor secondary to, the claim brought against ReUse, and thus is not properly within Rule 14's limitation that the impleaded third-party defendant be "a person . . . who is or may be liable to [ReUse] for [the third-party] claim against [ReUse]" by Rodgers. Stated differently, Jennings asserts that, because ReUse raises claims that will succeed or fail independent of whether ReUse is liable, those claims are not permissible under Rule 14.[3]

Also, Target, in its third-party complaint against Williams, has asserted that the defects in the building pads may be the result of defective work on the part of Williams or Rodgers wholly apart from any defect in the fill material. Since Rodgers cannot seek indemnity from ReUse on these claims, these claims are not relevant to ReUse's contribution claims against the Building Contractors.

**3.** McKinney has presented an additional basis for dismissal in the Virginia statute of repose (Code

## DISCUSSION

### A. Standard of Review

Each of the parties seeking to dismiss a contribution claim by ReUse relies on Fed. R.Civ.P. 12(b)(6), under which the moving party must demonstrate that the plaintiff cannot prove a set of facts that will support the asserted claim and entitle the plaintiff to relief. In considering a Rule 12(b)(6) motion, the Court primarily considers the factual allegations in the Complaint, which it must accept as true, *Zakeri v. Oliver,* 19 F.Supp.2d 553, 555 (E.D.Va.1998), but may also consider matters of public record. 2 James Wm. Moore, et al., Moore's Federal Practice § 12.34[2] (3d ed.2002) (collecting cases and citing *Norfolk Southern Ry. Co. v. Shulimson Bros.,* 1 F.Supp.2d 553, 555 n. 1 (W.D.N.C.1998)). Therefore, in resolving these motions to dismiss, only the factual allegations asserted by ReUse in its pleadings, along with any relevant matters of public record, will be considered.

### B. Assessment Of ReUse's Impleader Of The Building Contractors Under Rule 14(a)

Rule 14 addresses third-party practice, and subsection (a) establishes the conditions under which a defendant may implead a third party into an existing action. Rule 14(a) states in relevant part:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable *to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff* . . . . A third-party defendant may proceed under this rule against any person not a party to the action who is

of Virginia § 8.01–250). McKinney argues that the statute of repose "evinces the salutary legislative policy that after five years contractors and design professionals should no longer be subjected to liability for defects in improvements they have constructed or designed." In light of the conclusions respecting Rule 14 and the contribution doctrine, it is unnecessary to address this issue.

or may be liable *to the third-party defendant for all or part of the claim made in the action against the third-party defendant.*

(emphasis added). As the emphasized language suggests, a third-party claim under Rule 14 can be maintained only if the liability asserted is in some way derivative of the main claim. *Scott v. PPG Indus., Inc.*, 920 F.2d 927, 1990 WL 200655, *3 (4th Cir.) (unpublished); *Watergate Landmark Condominium Unit Owners' Assoc. v. Wiss, Janey, Elstner Assoc., Inc.*, 117 F.R.D. 576, 578 (E.D.Va.1987); *see also* 6 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 1446 (2d ed.1990); 3 Moore's Federal Practice § 14.04[1]. "Under Rule 14(a), a third-party defendant may not be impleaded merely because he may be liable to the *plaintiff.*" *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 368 n. 3, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (emphasis in original). As the court in *Watergate* explained:

> [A] third party claim is not appropriate where the defendant and putative third party plaintiff says, in effect, "It was him, not me." Such a claim is viable only where a proposed third party plaintiff says, in effect, "If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part ... of anything I must pay plaintiff."

117 F.R.D. at 578.

In its contribution claims against the Building Contractors, ReUse is asserting a variant of the "it's him, not me" argument. ReUse asserts that defective construction caused at least part, and perhaps all, of the damage to the various buildings, wholly apart from any damage caused by defective fill. If that be taken as true, then any liability on the part of the Building Contractors can be neither derivative of, nor secondary to, the liability of ReUse on the claim asserted against it by Rodgers. Indeed, if that is shown to be the case, ReUse will be wholly or partly excused from the claim asserted by Rodgers.

▮ ReUse seeks to overcome the result necessitated by *Watergate* with the talismanic characterization of its claim against the Building Contractors as one for contribution, and then arguing that contribution is generally a proper basis on which to file a third-party complaint. While the latter proposition is true, *see Watergate*, 117 F.R.D. at 578, the *typical* contribution claim falls clearly within the ambit of Rule 14(a). For example, a defendant in a traditional tort action would be able to seek contribution from a joint tortfeasor under Rule 14(a).[4] But, if ReUse were correct that contribution is available in this case under Virginia's substantive law (and, as discussed below, it is not), then this sort of contribution would be highly atypical, and not permissible under the terms of Rule 14(a). Just because a putative third-party plaintiff's theory of recovery from the third-party defendant purports to be "contribution," it does not follow that Rule 14(a) must permit the claim. As one leading treatise has noted, "resort to Rule 14 in a federal rather than a state court occasionally may have the effect of altering a party's ability to assert a substantive claim. Although state law governs whether a substantive right to relief exists, federal law determines whether that right may be asserted by way of impleader." 6 Wright, et al., Federal Practice and Procedure § 1446 at n. 16.

▮ In sum, the so-called "contribution" claim asserted by ReUse against the Building Contractors cannot be brought under Rule 14 because the Building Contractors are alleged to be liable to the Building Owners on account of contract, rather than being liable to ReUse for all or part of the claim asserted against it by Rodgers. Thus, they are not persons who are, or may be, "liable to the third-party plaintiff," ReUse, "for all or part of [Rodgers'] claim against the third-party plaintiff," ReUse.

---

4. Of course, as has occurred legitimately in this case, a defendant may implead a party who has contractually agreed to *indemnify* the defendant against claims of the type brought by the plaintiff, indemnity being the quintessential kind of third-party claim. *See Watergate*, 117 F.R.D. at 578.

## C. The Availability Of Contribution Under Virginia Law

 Under Virginia law, contribution is available only where both the party seeking contribution, and the party from whom contribution is sought, are both liable to a third party for the same indivisible injury. Thus, in order for any claim for contribution to be properly pleaded under Virginia's substantive law, the third-party complaint must reflect that the injured party must have a valid claim for redress of an indivisible injury against both the contribution plaintiff and the contribution defendant:

> [Code of Virginia § 8.01–34] gives a right of contribution only where the person injured has a right of action against two persons for the same indivisible injury. Though the concurring negligence of two persons may have resulted in an indivisible injury to a third, *if the third person has a cause of action against only one of them, that one cannot enforce contribution from the other.* The statute allowing contribution does not create any greater liability than existed before its enactment.

*Virginia Electric and Power Co. v. Wilson,* 221 Va. 979, 277 S.E.2d 149, 150 (1981) (quoting *Norfolk Southern R.R. v. Gretakis,* 162 Va. 597, 174 S.E. 841, 842 (1934)) (emphasis added); *see also Ohio Cas. Ins. Co. v. State Farm Fire & Cas. Co.,* 262 Va. 238, 546 S.E.2d 421, 423 (2001)("The right of equitable contribution ... is based upon equitable principles that imply a contract between the parties to contribute ratably toward the discharge of a common obligation."); *Allstate Ins. Co. v. United Servs. Auto. Ass'n,* 249 Va. 9, 452 S.E.2d 859, 861 (1995) ("The right to contribution as such does not arise out of any express contract or agreement between the parties to indemnify each other, but is based

on the broad principles of equity that where two or more persons are subject to a *common burden* it shall be borne equally, since the law implies a contract between them to contribute ratably towards the discharge of the *obligation.*") (internal citation omitted).[5]

In this case, ReUse invoked the contribution doctrine as the predicate for impleading the various Building Contractors. ReUse's theory is that the Building Contractors, instead of, or in addition to, ReUse, are liable to the various Building Owners for the damage to the buildings because of breaches of the Building Contractors' contracts with the Building Owners. According to ReUse, the Building Owners are the injured parties; the damage to the various buildings is the relevant injury; and both ReUse and the Building Contractors are liable to the Building Owners for that damage.

ReUse's theory suffers from two significant defects: (1) ReUse inappropriately characterizes the respective Building Owners, rather than Rodgers, as the injured party, and identifies the damage to the buildings, rather than the liability of Rodgers, as the relevant injury; and (2) wholly apart from whether Rodgers or the respective Building Owners is the "injured party," the economic loss rule forecloses any conceivable scenario whereby either Rodgers or one of the Building Owners would have rights of action against both ReUse and the Building Contractors.

### 1. Rodgers Is The Proper Injured Party, And The Liability Of Rodgers Is The Relevant Injury

 The various Building Owners are not the relevant "injured parties" for the purpose of the contribution analysis. In assessing

---

**5.** ReUse asserts that the contribution doctrine only requires that the injured party have some right of action against the contribution defendant, without regard to whether the injured party would have a right of action against the contribution plaintiff. In support of this assertion, ReUse relies on select language from *Gemco–Ware, Inc. v. Rongene Mold and Plastics Corp.,* 234 Va. 54, 360 S.E.2d 342, 344 (1987), wherein the Supreme Court of Virginia stated that "before contribution will lie it is essential that a cause of action by the person injured have existed against the third-party defendant." That statement is

correct, and is not inconsistent with formulation of the contribution doctrine enunciated in *Wilson:* The ability of the injured party to recover against the contribution *defendant* is essential for contribution to lie. However, it is also essential that injured party have a right of action against the contribution *plaintiff.* ReUse relies on the *Gemco–Ware* formulation as a complete enunciation of the contribution doctrine and it simply is not. In fact, the *Gemco–Ware* court cites *Wilson* approvingly, and expresses no intention to alter the substantive requirements of the contribution doctrine.

whether ReUse has a valid contribution claim, Rodgers is the appropriate "injured party," because ReUse is only liable to the extent that Rodgers suffers any injury. And, Rodgers does not—indeed cannot—assert any injury attributable to the Building Contractors. In other words, any injury caused by the Building Contractors would be wholly distinct from the injury suffered by Rodgers. If Rodgers is held liable at all, the basis for that liability will be the defects it caused in the construction of the various building pads. The Building Contractors had nothing to do with the building pads—any injury that they may have caused is related to the buildings themselves, not to what lays beneath. Therefore, the injuries allegedly caused by ReUse and the Building Contractors are distinct, and divisible.

### 2. The Injured Party Cannot Recover From Both ReUse And The Each Of The Various Building Contractors

■■■ Even if the asserted injury to Rodgers somehow could be considered to be indivisible, the economic loss rule would present an insuperable obstacle to contribution regardless of whether Rodgers is the injured party or not. The economic loss rule requires that parties seeking recovery for economic losses must pursue their remedy through contract law rather than tort law. Under either "injured party" scenario, at least one of the alleged wrongdoers lacks privity of contract with the injured party. Therefore, ReUse cannot establish that it shares a "common obligation" with any of the Building Contractors.

■■■ Under Virginia law, a plaintiff cannot recover purely economic damages from a defendant unless the plaintiff is in privity of contract with that defendant. As the Supreme Court of Virginia has explained:

The law of torts is well equipped to offer redress for losses suffered by reason of a breach of some duty imposed by law to protect the broad interests of social policy. Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation

necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.

*Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.,* 236 Va. 419, 374 S.E.2d 55, 58 (1988) (internal citations and quotation marks omitted). Therefore, under Virginia law, economic losses cannot be recovered in a negligence action. *Id.; Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc.,* 152 F.3d 313, 316 (4th Cir.1998). ReUse concedes that the damages suffered by the Building Owners, and sought to be passed through to Williams and Rodgers by way of indemnity, are economic losses, and that the economic loss rule would apply in this case to any claim for damages grounded in tort.

■■■ ReUse's claims against the Building Contractors sound in negligence, not in contract. That is so for a very good reason: ReUse is not in privity with the Building Contractors. And, of course, Rodgers is not in privity with the Building Contractors. Nor are the Building Owners in privity with ReUse. Under these circumstances, the economic loss rule forecloses any cognizable claim by ReUse against the Building Contractors.

### CONCLUSION

For the foregoing reasons, the motions of ECS, McKinney, KKE, ER & A, Jennings, Freeman & Morgan, Telesis, KBS, Zannino, and EDC to dismiss ReUse's respective claims for contribution are granted. The motion of ReUse to dismiss the counterclaim [6] of McKinney is denied as moot, because McKinney is no longer a party to this action.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

---

**6.** McKinney filed what was originally a third-party claim against ReUse. Once the claim of Williams against McKinney was dismissed by consent of the parties, this claim was converted to a counterclaim.

**416**

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it hereby ORDERED that the following motions shall be GRANTED:

 a. The motion of Fourth/Fifth–Party Defendant, Engineering Consulting Services, Inc., to dismiss the cross-claim of ReUse Technology, Inc. ("ReUse") against it;

 b. The motion of Fourth/Fifth–Party Defendant, McKinney & Co., Inc., to dismiss the cross-claim of ReUse against it;

 c. The motions of Sixth and Seventh–Party–Defendant, KKE Architects, Inc., to dismiss the Sixth and Seventh–Party Complaints of ReUse against it;

 d. The motion of Sixth–Party Defendant, Ericksen, Roed & Assoc., to dismiss the Sixth–Party Complaint of ReUse against it;

 e. The motion of Sixth–Party Defendant, L.F. Jennings, to dismiss the Sixth–Party Complaint of ReUse against it;

 f. The motion of Sixth–Party Defendant, Freeman & Morgan, P.C., to dismiss the Sixth–Party Complaint of ReUse against it;

 g. The motion of Sixth–Party Defendant, Telesis Solutions, Inc., to dismiss the Sixth–Party Complaint of ReUse against it;

 h. The motion of Sixth–Party Defendant, KBS, Inc., to dismiss the Sixth–Party Complaint of ReUse against it;

 i. The motion of Seventh–Party Defendant, Zannino Engineering, Inc., to dismiss the Seventh–Party Complaint of ReUse against it; and

 j. The motion of Seventh–Party Defendant, Eilerson Development Corporation, to dismiss the Seventh–Party Complaint of ReUse against it.

The claims to which each of these motions refers shall be DISMISSED without prejudice.

The motion of ReUse to dismiss the Third/Fourth–Party Complaint of McKinney against it is denied as moot.

The Clerk is directed to send a copy of this Order to all counsel of record.

It is so ORDERED.